IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEIFULLAH ABDUL-SALAAM, | : | No.  4:CV-02-2124 |
| Petitioner, | : | (Judge Jones) |
| v. | : | |
| JEFFREY BEARD, Commissioner, Pennsylvania Department of Corrections; WILLIAM S. STICKMAN, Superintendent of the State Correctional Institution at Greene; and JOSEPH P. MAZURKIEWICZ, Superintendent of the State Correctional Institution at Rockview, | : | |
| Respondents. | : | |

**MEMORANDUM AND ORDER**

**August 11, 2005**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is Petitioner Seifullah Abdul-Salaam's ("Abdul-Salaam" or "Petitioner") Second Motion for Discovery (the "Motion"). (Rec. Doc. 43). The Respondents have filed a timely response. We held oral argument on Petitioner's Motion on May 2, 2005 and subsequently conducted a hearing at which time testimony was taken on August 2, 2005. The Motion is accordingly ripe for our review.

For the foregoing reasons, we will grant the Petitioner's Motion in part and defer ruling in part.

## **FACTUAL AND PROCEDURAL HISTORY:**

The procedural chronology of this death penalty homicide case, which is before us pursuant to Petitioner's habeas corpus filing, has been set forth in our prior orders and is well known to the parties. The following recitation of that history is therefore sufficient for purposes of this Court's review of the pending Motion.

At Petitioner's original 1995 trial in the Cumberland County Court of Common Pleas, one piece of evidence put forth by the Commonwealth involved testimony regarding blood recovered from the steering wheel of a Suzuki sport utility vehicle that the Commonwealth represented was the getaway vehicle. At the trial, expert testimony was presented, without using DNA testing modalities, that the blood on the steering wheel matched Petitioner's to within ten percent of the population. Because the Commonwealth's expert testified at trial that the blood sample tested was entirely consumed, Petitioner now seeks to check the wheel of the Suzuki for remaining blood, and if any quantity is found, to allow it to be DNA tested.

At the hearing held on this Motion, the Court heard testimony from several

witnesses. First, we heard from Dr. Albert Harper ("Dr. Harper"). Dr Harper, a forensic scientist and director of the Henry C. Lee Institute of Forensic Science at the University of New Haven, evaluated the subject steering wheel on November 30, 2004 at the Cumberland County Courthouse. Although he did no testing on the wheel, he believes to a reasonable degree of certainty that the wheel contains biological material that is most likely blood. (See also Petr.'s Second Mot. ¶ 6).

Second, the Court heard testimony from Donald J. Bloser ("Bloser") a forensic scientist working for a Pennsylvania State Police ("PSP") Crime Laboratory. Bloser originally conducted testing on the steering wheel in preparation for the 1995 trial as referenced above. Prior to the trial, in late 1994 and early 1995, he conducted various tests at the behest of the detectives who were investigating the case. Specifically, those detectives instructed him to perform blood typing on blood found on the steering wheel. Bloser was not instructed to perform DNA testing on the blood recovered from the steering wheel. Although Bloser stated at trial that he removed "as much [blood] as [he] could" from the steering wheel, he testified at our hearing that he also believes biological material, most likely blood, remains on the steering wheel. (Trial Tr. 128, undated; Def. Hr'g Ex. 1).

Next, we heard testimony from the Petitioner's DNA expert, Dr. Edward T. Blake ("Dr. Blake") of Forensic Science Associates in Richmond, California. Dr.

Blake examined photographs of the subject steering wheel and stated that he likewise believes it highly likely that the smudge on the wheel is blood. Dr. Blake also testified in detail as to the procedures his lab would utilize in first, testing the smudge for biological material and recovering a sample if such a sample is present, and then in conducting a DNA test of the recovered material.

Finally, we heard testimony from Christine Tomsey ("Tomsey"), a forensic scientist for the PSP. Tomsey testified in similar fashion to Dr. Blake regarding how a PSP lab would examine the smudge and remove a sample from the wheel for DNA testing.

Both Tomsey and Dr. Blake stated that any individual scientist would prefer total control over the entire process. Notably however, both witnesses testified that the results of the process should not be different in the event that either one properly conducted the analysis.

**DISCUSSION:**

Petitioner's request involves conducting an inquiry that is twofold. At the outset, we must determine whether permitting DNA testing at this juncture and on these facts in a 28 U.S.C. § 2254 habeas corpus proceeding is proper. In the event our inquiry leads to an affirmative answer, we must then consider how the testing will be conducted, and by whom. We will consider these areas in turn.

### A.     Discovery in  § 2254 Habeas Corpus Proceedings

Respondents interpose two separate arguments in support of their claim that Petitioner's discovery request seeking a DNA test is improper.  First, they contend that Petitioner has failed to show good cause.  Second, Respondents contend that Petitioner's request must be exhausted in a state court proceeding.

### 1.     Habeas Discovery is Permitted for Good Cause Shown

In habeas corpus actions, discovery requests such as Petitioner's are governed by Rule 6 of the Rules Governing Section 2254 Case (the "Habeas Corpus Rules").  Rule 6 provides, in relevant part:

> (a)   Leave of Court Required.  A judge may, for **good cause**, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery.
>
> (b)   Requesting Discovery.  A party requesting discovery must provide reasons for the request.

Habeas Corpus Rule 6 (emphasis added).  In Harris v. Nelson, Justice Fortas explained that discovery is proper in a federal habeas corpus proceeding:

> [W]here specific allegations before the court show reason to believe that the petitioner **may**, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry. Obviously, in exercising this power, the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the 'usages and principles of law.

394 U.S. 286, 300 (1969)(emphasis added); see also Bracy v. Gramley, 520 U.S. 899, 908-09 (1997). Courts within our circuit have interpreted "good cause" to mean that a petitioner's requested discovery must "point to specific evidence that might be discovered that would support a constitutional claim." Marshall v. Hendricks, 103 F.Supp.2d 749, 760 (D.N.J. 2000), rev'd in part on other grounds, 307 F.3d 36 (3d Cir. 2002). In the context of this case we do not believe that, as argued by Respondents, a potential result of the DNA test (i.e. that blood obtained and tested is not Petitioner's) must in itself prove Petitioner's actual innocence. See Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir.1994) (holding that although "fishing expeditions" are not permitted, that the requested discovery is not required alone to demonstrate the petitioner's actual innocence but rather must go towards proving his constitutional claims).

Respondents forcefully contend that Petitioner has failed to demonstrate good cause for the exercise sought. They state that DNA testing cannot and will not exonerate the Petitioner under any circumstances. (Resps.' Ans. Petr.'s Mot. ¶ 7). To reiterate, we do not believe that it is necessary for Petitioner to demonstrate that the requested evidence would exonerate him. Rather, he must show that if the facts are more fully developed he may be entitled to relief. As previously stated,

we believe that this requirement is short of necessitating that any and all newly discovered evidence must in and of itself be exonerating. Although clearly not the only evidence used to convict the Petitioner, blood evidence was an important piece of the Commonwealth's case at trial, as Donald Bloser's testimony demonstrated. To the extent that DNA testing was available at the time of Petitioner's trial, it was not widely used at that time. The blood testing administered by the Commonwealth, as previously noted, was certainly less precise than the testing modalities, including DNA, available today. Accordingly, we are inclined to allow Petitioner latitude to complete the procedures he seeks, and then to allow him to argue the impact, if any, of the results in subsequent submissions.

Second, Respondents express a fear that if this Motion were to be granted, it will unleash a torrent of future discovery requests from the Petitioner. (Id.). This is an understandable fear given the extended duration of this case. However, as in all habeas cases, we will as we must evaluate each discovery request in accordance with the Habeas Corpus Rules and the prevailing case law. Respondents should be assured that our ruling is not intended to open a discovery floodgate, and that any future discovery requests will be handled in the same deliberate manner that the Court has utilized in resolving this Motion.

### 2. **Exhaustion Requirements**

An integral procedural portion of any habeas proceeding is exhaustion at the state court level.  The U.S. Supreme Court has explained that the importance of comity between state and federal courts requires petitioners seeking habeas corpus relief to fully exhaust their claims in state courts before proceeding with a petition in federal court.  See Rose v. Lundy, 455 U.S 509, 522 (1982)("[O]ne court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.").  Respondents thus argue that Petitioner has not exhausted his request for DNA testing in the Pennsylvania state courts and that as a result we lack jurisdiction to order such testing at this time.

More specifically, Respondents argue that Petitioner has failed to exhaust because he is obligated to proceed under a recently passed Pennsylvania statute allowing for post-conviction DNA testing.  See 42 Pa. Cons. Stat. § 9543.1.[1]

---

[1] 42 Pa. Cons. Stat. § 9543.1 provides:

(a) Motion.--

> (1) An individual convicted of a criminal offense in a court of this Commonwealth and ... awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

> (2) The evidence may have been discovered either prior to or after the applicant's conviction. .....

---

...

    (c)    Requirements.--In any motion under subsection (a), under penalty of perjury, the applicant shall:

    (1) [states what evidence is to be tested]

    (2)    (ii)    in a capital case:

        (A)    assert the applicant's actual innocence of the charged or uncharged conduct constituting an aggravating circumstance under section 9711(d) (relating to sentencing procedure for murder of the first degree) if the applicant's exoneration of the conduct would result in vacating a sentence of death; or

        (B)    assert that the outcome of the DNA testing would establish a mitigating circumstance under section 9711(e)(7) if that mitigating circumstance was presented to the sentencing judge or jury and facts as to that issue were in dispute at the sentencing hearing.

    (3) present a prima facie case demonstrating that the:

    (I)    identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

    (ii)    DNA testing of the specific evidence, assuming exculpatory results, would establish:

        (A)    the applicant's actual innocence of the offense for which the applicant was convicted;

        (B)    in a capital case, the applicant's actual innocence of the charged or uncharged conduct constituting an aggravating circumstance under section 9711(d) if the applicant's exoneration of the conduct would result in vacating a sentence of death; or

        (C)    in a capital case, a mitigating circumstance under

Presumably, this statute permits Abdul-Salaam to file a motion seeking DNA testing with his sentencing court, the Cumberland County Court of Common Pleas. Under Respondents' suggested scenario, we would order a stay of the instant habeas corpus proceedings while Abdul Salaam pursued relief at the state court level under § 9543.1. Only if the state courts denied his requested discovery would he be permitted to return and seek the same relief in these proceedings.

Petitioner counters that exhaustion under § 9543.1 is not required, and that we are free to allow discovery in this area solely pursuant to the Habeas Corpus Rules. We agree. Habeas Corpus Rule 6 merely requires a showing of good cause, not exhaustion. The exhaustion requirements are limited to the constitutional claims for relief within a habeas petition. See e.g., Lambert v. Blackwell, 387 F.3d 210, 228 (3d Cir. 2004)(holding that it is permissible for a court to delay a determination regarding exhaustion until after the completion of discovery); Calderon v. U.S. Dist. Court for the Northern Dist. of California, 120 F.3d 927 (9th Cir. 1997)(holding that discovery under Rule 6 is improper until the claims within a habeas petition themselves are exhausted in state court).

While circumstances in individual cases may make it more prudent to allow

---

section 9711(e)(7) under the circumstances set forth in subsection (c)(1)(iv).

the state courts to pass on discovery requests in habeas cases, we see no such utility here. Moreover, we decline to find that the supposed exhaustion requirement as postulated by Respondents exists, particularly in light of the clearly enumerated "good cause" requirement of Rule 6. See Steward v. Grace , 362 F.Supp.2d 608, 622, n.40 (E.D. Pa. 2005)("The state courts resolve th[e DNA testing] issue under Title 42, Section 9543.1 ... . Whether the state courts properly applied this state rule is not for federal court to decide on habeas review. This court is limited to reviewing Petitioner's request for DNA testing under the discovery rules applicable to § 2254 case, ... ."). We thus agree with the conclusion reached by Judge Rufe in Steward, which was that a determination of whether DNA testing is proper is wholly independent of what procedures are available for a habeas petitioner in state court.

Because we find both that Petitioner has demonstrated good cause for his request, and that state exhaustion of the said request in the context of this case is not required, we will proceed to resolve the question of how the requested DNA testing should be conducted.

> **B.** **Procedures for Conducting the Requested DNA Testing of the Steering Wheel**

In addition to disputing whether testing should be conducted at all, the

parties also disagree concerning how any DNA testing of the steering wheel should be performed. The Supreme Court has clearly held that "it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." Bracy, 520 U.S. 908-09. Our task in this regard is made more difficult by the inability of the parties to agree upon who would do the testing, due to mutual suspicions and other stated concerns regarding the proposed scientists and labs.

At the August 2, 2005 hearing on Petitioner's Motion, the Court heard a great deal of testimony about how the respective forensic experts proposed by the parties would conduct DNA testing of the steering wheel. Despite substantial disagreements as stated during these proceedings and in submissions received prior to the August hearing, it is evident to us that both PSP and Dr. Blake are fully competent and capable of conducting an examination of the subject steering wheel for the presence of blood, as well as to DNA test any sample obtained.

It thus devolves to us, in the manner of King Solomon, to attempt to balance the equities and concerns of the parties by crafting a protocol for examination of the subject steering wheel, removal of a sample, and for DNA testing of the same. We will achieve this balance by first allowing the parties to work together in removing a sample from the smudged portion of the steering wheel. We believe it to be entirely burdensome for us to compel the Respondents' designated

representative to travel to Dr. Blake's California laboratory to monitor the removal of a sample, and we will instead permit the sample to be removed in a PSP laboratory or at such other location as may be agreed upon by the parties. In so doing however, we direct that no testing for biological material or removal of a presumed sample shall be conducted outside the presence of Petitioner's representative. Morever, in the event that biological material is found to be present, the parties will work in collaboration to split any sample of the same in half, so that each will be permitted to perform DNA testing on the resulting pieces. It is understood that Petitioner's sample will be delivered to Dr. Blake for such testing. While we presume Respondents will utilize a PSP lab in the event that they desire to conduct a DNA analysis of their portion of any sample, they are not bound to do so.

Because the relief ordered by us will not entirely dispose of Petitioner's Motion, we will schedule a telephonic conference call within our Order for the purpose of determining what additional proceedings may be necessary prior to fully disposing of Petitioner's Motion.

**NOW, THEREFORE, THE FOLLOWING ORDER IS ENTERED:**

1. Petitioner's Second Motion for Discovery (Rec. Doc. 43) is GRANTED to the extent that:

   (a) A sample from the "smudged" portion of the subject Suzuki steering wheel shall be jointly removed in a PSP laboratory or other location as agreed to by the parties by Respondents' forensic scientist and a representative designated by Petitioner.

   (b) After removal of the said sample, it shall be split in half, in accordance with proper scientific techniques, and each party shall be permitted to independently test their one-half of the sample for the presence of DNA.

   (c) All removal and testing shall be completed by October 15, 2005.

   (d) The unaddressed issues raised by Petitioner's Second Motion for Discovery are DEFERRED.

2. A conference call with the Court will be scheduled for November 2, 2005 at 9:30 a.m. At the time of this call, the parties shall discuss whether additional proceedings will be necessary in light of the said removal of the sample and testing, if any.

3.	Petitioner's counsel shall initiate said conference call.  The Court's phone number is (570) 601-1497.  All counsel shall be ready to proceed when my chambers is contacted.

s/ John E. Jones III  
John E. Jones III  
United States District Judge
