IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| SEIFULLAH ABDUL SALAAM, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| | : | No. 4-CV-02-2124 |
| v. | : | |
| | : | Honorable John E. Jones, III |
| JEFFREY BEARD, Commissioner, | : | |
| Pennsylvania Department of Corrections; | : | |
| WILLIAM S. STICKMAN, Superintendent of | : | **ELECTRONICALLY FILED** |
| the State Correctional Institution at Greene; and | : | |
| JOSEPH P. MAZURKIEWICZ, Superintendent | : | |
| of the State Correctional Institution at | : | |
| Rockview, | : | |
| | : | |
| Respondents. | : | |

_____

### PETITIONER'S MOTION FOR RELIEF ON THE MERITS AND CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT

Michael Wiseman
David Zuckerman
Elizabeth Larin
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520


Counsel for Petitioner,
Seifullah Abdul-Salaam


Dated: Philadelphia, PA
April 6, 2007

TABLE OF CONTENTS

I.      Preliminary Statement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Structure of this Motion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    Relevant Procedural History and Statement of the Case  . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     Claim I: The Withheld Clifton Material  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.      Claim IV: The Blood Evidence  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      Background  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

        C.      The Court May Rule on this Claim  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                i.      The Exhaustion Doctrine does not Require Petitioner to
                        Afford the State Courts Multiple Opportunities to Review a
                        Claim Particularly When the Prosecution Withheld the
                        Evidence Related to the Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                ii.     There are No Remaining State Remedies  . . . . . . . . . . . . . . . . . . . . . . . 17

                        a.      The Claim Supported by the Newly
                                Discovered Evidence is "Waived" In
                                Accordance with Pennsylvania Post-
                                Conviction Jurisprudence and Because of the
                                Law of the Case Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                        b.      The Claim to Which the Newly Discovered
                                Evidence Relates is "Previously Litigated"
                                and Therefore not Cognizable Under
                                Pennsylvania Post-Conviction Jurisprudence  . . . . . . . . . . . . . . 19

VI.     The Above-Described Due Process Violations are Material to Petitioner's
        Conviction and Warrant the Granting of the Writ  . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII.    Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I.  PRELIMINARY STATEMENT.

Petitioner, SEIFULLAH ABDUL-SALAAM, through undersigned counsel, hereby moves for relief on the merits of two of his habeas corpus claims, and in support of this *Motion* states as follows.[1]

1.      Pending before the Court is Seifullah Abdul-Salaam's *Petition for Writ of Habeas Corpus* (*Petition*) (document # 8).  Included within the *Petition* are twelve substantive claims for relief.  Five of these claims challenge Petitioner's conviction, and seven challenge his death sentence.

2.      While Petitioner believes that he is entitled to relief on all of the twelve claims, he believes that two guilt phase claims present particularly poignant and clear grounds for granting the writ as to his convictions.  These are claims denoted in the *Petition* as numbers I and IV, and each presents significant and troubling violations of Petitioner's right to due process of law.  Petitioner believes that these due process violations are material to his convictions, and thus require relief, as set forth in prior submissions and herein.  Petitioner submits that these claims are ripe for review at this time, without need for further evidentiary development or written submissions, although

---

[1]Petitioner will follow the citations used in prior submissions.  The transcript of the state court proceedings will be referred to as "Notes of Testimony" and will cited by "NT" followed by the relevant date and page number.  Orders or opinions emanating from the state trial court will be cited as "TCO" followed by the relevant date and page numbers.  The Pennsylvania Supreme Court has generated three substantive opinions in this case: one on direct appeal (Commonwealth v. Abdul-Salaam, 678 A.2d 342 (Pa. 1996)); and two in post-conviction (Commonwealth v. Abdul-Salaam, 808 A.2d 558 (Pa. 2001) reconsideration denied, September 20, 2002) and Commonwealth v. Abdul-Salaam, 812 A.2d 497 (Pa. 2002)).  These opinions will be cited, respectively, as Abdul-Salaam I, II and III.  Pleadings, submissions, opinions and orders of this Court will be referenced by the document number assigned to each on the Court's docket.  The transcript of the hearing held in this Court on August 2, 2005 will be cited as NT 8/2/05 followed by a page number.  All other citations are either explained or are self-explanatory.  All emphasis herein is supplied unless otherwise noted.

1

Petitioner believes that oral argument on this *Motion* would be appropriate.[2]

3.      Petitioner moves for relief on these two claims because, if he is correct that he is entitled to relief on them, disposing of the *Petition* on just these two grounds will save the Court and the parties significant time and effort that would be spent addressing the other ten claims, which will become moot in the event relief is awarded on Claims I and IV. Since proceeding in this manner will shorten the time needed to resolve what has already been a lengthy litigation, Petitioner submits that disposing of the *Petition* on these two claims will benefit the Commonwealth, which certainly has an interest in the quick disposal of the *Petition* and in the commencement of a retrial, in the event one is required.  This course will also benefit Petitioner, who is likewise interested in a speedy disposition of his *Petition*.  Finally, Petitioner discerns no prejudice to the Commonwealth from proceeding in this manner – should Petitioner be incorrect about his entitlement to relief on Claims I and IV, then obviously the Court can immediately turn its attention to the remaining claims, with briefing (if necessary) and argument, and nothing (including time) will be lost in the process.

## II.   STRUCTURE OF THIS MOTION.

4.      Petitioner will first review in summary fashion the relevant procedural events in this litigation, and the undisputed facts that have been established either in state court or in the course of this litigation.  Second, he will briefly review the elements of Claim I, regarding suppression of the Clifton material.   This review will be brief as the claim has already been addressed at length in prior submissions. Third, Petitioner will present argument on the substance of Claim IV, which has

---

[2]As shown below, Petitioner believes that there are no longer any disputed material facts with respect to Claims I and IV, and therefore further evidentiary development is not required.  However, should Respondents or the Court disagree, Petitioner is amenable to such further development, as required.

2

not been briefed in this Court since the completion of Dr. Blake's DNA testing.  Included within that argument will be a discussion of the exhaustion questions relevant to Claim IV.  Finally, Petitioner will demonstrate that the due process violations presented in Claims I and IV are material to his convictions and thus require relief.  Again, this argument will be brief, as he has already presented lengthy argument on the materiality of the due process violation respecting the Clifton material.

**III.    RELEVANT PROCEDURAL HISTORY AND STATEMENT OF THE CASE.**

5.      Petitioner was charged under Cumberland County docket number 94-1499 (Honorable Kevin Hess, J.) with first degree murder and related charges in connection with the August 19, 1994 shooting death of New Cumberland Pennsylvania Police Officer Willis Cole. Following a jury trial, he was convicted of these charges on March 15, 1995.  The jury returned a verdict of death following a penalty hearing on March 16, 1995.

6.      Petitioner's convictions and sentences were affirmed on direct appeal on June 18, 1996.  Abdul-Salaam-I.  His *Petition for Certiorari* in the United States Supreme Court was denied on March 31, 1997.  Abdul-Salaam v. Pennsylvania, 520 U.S. 1157 (1997).

7.      Petitioner filed a petition for state post conviction relief on September 23, 1997. Hearings were held on this petition on October 3, 1997,  December 11, 1997, April 16, 22, 23, 1998 and May 1, 1998.

8.      On November 12, 1998 Judge Hess issued an order and opinion denying Petitioner post-conviction relief.

9.      The Pennsylvania Supreme Court affirmed denial of Petitioner's post-conviction petition on December 31, 2001.  Abdul-Salaam–II.

10.     On January 10, 2002 Petitioner filed an *Application for Reconsideration* of Abdul-

3

Salaam-II, which was denied without opinion on September 20, 2002 . While that *Application* was pending, Petitioner filed a second state post-conviction petition in the Court of Common Pleas on February 28, 2002. Appellate proceedings on the second petition commenced following the filing by Petitioner of a *Praecipe for Entry of Adverse Order Pursuant to Rule 301(e) Pa.R. App.P.* On December 12, 2002 the Pennsylvania Supreme Court decided Abdul-Salaam–III. Although this opinion indicated the Court's disagreement with the various claims raised in the *Second Petition*, the Court permitted appellate briefing only on the Ring v. Arizona, 536 U.S. 584 (2002) claim.

11.    Proceedings in this Court commenced on November 25, 2002 when Petitioner filed a *Motion for Stay of Execution, Appointment of Habeas Corpus Counsel and Permission to Proceed as a Poor Person* (document # 1). The Motion was granted on December 9, 2002 (document #6) and Petitioner was afforded 120 days to file his *Petition*.

12.    Petitioner filed the *Petition* (document # 8) on March 25, 2003 and he filed a supporting *Appendix* on March 31, 2003 (document # 10). Respondents, represented by the Cumberland County District Attorney, filed a *Response* to the *Petition* on August 11, 2003 (document # 19).

13.    Petitioner filed his *Reply Memorandum* on October 27, 2003 along with *Petitioner's Motion for Omnibus Intermediate Relief in Habeas Corpus Proceedings* (documents # 23 and # 22, respectively).

14.    Following responsive and reply briefing, the Court ruled on *Petitioner's Omnibus Motion* on July 26, 2004 (document # 33). Among other things, the Court held that the procedural bar imposed by the Pennsylvania Supreme Court in Abdul-Salaam–II, with respect to six claims raised in Petitioner's state post-conviction petition, was not adequate to preclude this Court's review.

4

See document # 33 at page 21 ("we hold that the six waivers found by the Pennsylvania Supreme
Court were not based on an adequate state ground creating a procedural bar to their review by this
Court.").[3]

15.    The Court also permitted Petitioner to conduct limited discovery.  In particular, it
allowed Petitioner to:   propound an interrogatory regarding whether the Commonwealth had
provided the so-called Harlacker Report (which contained the information about Clifton) to trial or
appellate defense counsel; inspect certain biologic evidence; and take limited depositions.  See
document #33 at pages 8-10.

16.    Subsequent to the Court's ruling, the parties reached a *Stipulation* in lieu of the
interrogatory regarding the Harlacker Report which was filed on August 11, 2004 (document # 35).
The *Stipulation* stated:

> No person in the current or past employ of the Cumberland County District
> Attorney's Office, or in the current or past employ of related law enforcement
> agencies, has a current recollection of whether the report of Detective John C.
> Harlacker, Dauphin County Criminal Investigation Division, dated August 19, 1994,
> which was marked in evidence at Petitioner's state post-conviction hearing as
> *Petitioner's Hearing Exhibit 2 (NT 4/16/98, 12)* and is Exhibit 5 to *Petitioner's
> Appendix in Support of Petition for Writ of Habeas Corpus*, was ever provided by the
> Cumberland County District Attorney, or any agent on his behalf, to Petitioner, any
> counsel for Petitioner, or any agent of Petitioner or his counsel, prior to its production
> in Court on April 16, 1998.
>
> However, the parties agree that based upon the state of the full record before this
> Court that the Harlacker Report was not provided to Petitioner's counsel at any time
> prior to April 16, 1998, and Respondents do not contend to the contrary.

17.    Also subsequent to the Court's ruling of July 26, 2004, Petitioner inspected the
biologic evidence, which led to his filing of *Petitioner's Second Motion for Discovery* on March  1,

---

[3]The six claims found waived by the Pennsylvania Supreme Court include the two claims that
are the subject of this *Motion*, i.e., Claim I and Claim IV.  See Abdul-Salaam–II, at 560.

2005 (document #43).  In this *Motion* Petitioner sought permission to conduct DNA testing of apparent blood found on the steering wheel of the get-away vehicle.

18.    Following additional briefing on the *Second Motion for Discovery* and oral argument, this Court conducted an evidentiary hearing on the *Motion* on August 2, 2005.  Following the hearing it granted Petitioner's motion in part and allowed his expert to gather the apparent blood from the steering and to conduct DNA testing.  See Order of August 11, 2005 (document # 77).[4]

19.    With the assistance of the Office of the Pennsylvania Attorney General, Respondents took an interlocutory appeal to the Court of Appeals for the Third Circuit of this Court's August 11 order.  That appeal Abdul-Salaam v. Beard, 05-9005 (3d Cir.), was dismissed as a jurisdictionally defective interlocutory appeal.  See Order of October 6, 2005 (document # 83).  Respondents sought reargument *en banc*, and said request was also denied.  See Order of Court of Appeals of December 12, 2005, copy attached.  Following the denial of its request for *en banc* rehearing, this Court granted Respondents' *Motion* to stay this Court's August 11 order pending its filing of a *Petition for Certiorari* in the United States Supreme Court.  The *Motion* was granted on January 2, 2006 (document # 87).  The Commonwealth's *Petition for Certiorari* was denied.  Beard v. Abdul-Salaam, 126 S.Ct. 2295 (May 22, 2006).

20.    Following the interlocutory appellate proceedings, Petitioner was able to gather the

_____

[4]In deciding whether Petitioner would be permitted to conduct DNA testing this Court noted the significance of the blood evidence in this case.  Document # 77, at 7 ("Although clearly not the only evidence used to convict Petitioner, blood evidence was an important piece of the Commonwealths' case at trial, as [Pennsylvania State Police Serologist] Donald Bloser's testimony demonstrated.").   Another significant development arising from the hearing was the production of the bench notes generated by Mr. Bloser, which had not previously been provided to the defense. These notes showed that, contrary to his trial testimony, there was "lots" of blood remaining on the wheel.  NT 8/2/05, 36.

DNA evidence and to conduct the testing that he had sought in his *Second Discovery Motion*. Pursuant to this Court's direction, Petitioner's expert conducted the harvesting of the DNA evidence in cooperation with Respondents' agents and in Respondents' lab.  One half of all of the samples taken by Petitioner's experts were provided to Respondents so that they could replicate the testing, if they wished.

21.     Subsequent to gathering the DNA evidence from the steering wheel, Dr. Blake has authored three reports, which pursuant to prior arrangement were provided to Respondents' counsel, and which Petitioner filed with this Court.  <u>See</u> documents # 101, 104 and 116.  These reports taken together establish that – contrary to the evidence presented at trial – Petitioner's blood was **not** on the steering wheel of the get-away vehicle, but that the blood on the wheel belonged to the co-defendant, Scott Anderson.

22.     In a telephone conference s (which were of record), Respondents have indicated that they do not and will not contest the results reached by Dr. Blake, despite being afforded the opportunity to do so.

23.     On January 16, 2007 Petitioner filed a third state post-conviction petition in the Court of Common Pleas, Cumberland County.  This third petition presented the exculpatory results of Dr. Blake's testing and was filed to preserve Petitioner's rights to litigate in state court in the event that this Court holds that it cannot rule on Claim IV.  To date, and consistent with Petitioner's request, the state court has taken no action on the third petition.

**IV.    Claim I: The Withheld Clifton Material.**

24.    Petitioner has already presented this Court with a full explication on the Tony Clifton evidence that was not disclosed to trial defense or appellate counsel, and which only came to light through the issuance of a subpoena in the state post-conviction hearing.  See *Petition* at ¶ ¶ 45-60. Moreover, as set forth in the *Petition*, the law with regard to such <u>Brady</u> violations is neither complex nor controversial.  See *Petition* at ¶ ¶ 39-42.

25.    Through this Court's discovery orders, Petitioner has conclusively established that the Clifton material was not provided to trial defense or appellate counsel, and Respondents "agree that based upon the state of the full record before this Court that the Harlacker Report was not provided to Petitioner's counsel at any time prior to April 16, 1998, and **Respondents do not contend to the contrary.**"  *Stipulation* (document # 35).

26.    Thus, the first element of the <u>Brady</u> violation has been established: the Clifton material was not provided by the trial prosecutor to the defense.  Petitioner will address the materiality of the withheld information below.

**V.    Claim IV: The Blood Evidence.**

    **A.    Background.**

27.    The Commonwealth presented evidence at trial suggesting that Petitioner's blood was found on the steering wheel of the Suzuki.  The alleged "match" was based on primitive blood typing and antigen testing, and not on available and far more precise DNA analysis.

28.    In his initial state post-conviction litigation Petitioner relied on the trial testimony of Pennsylvania State Police Serologist, Donald Bloser, indicating that all of the blood from the steering

wheel was consumed in conducting blood typing and antigen testing.   NT 3/14/95, 121.[5]

Accordingly, Petitioner argued in state post-conviction that his right to due process was violated

because law enforcement consumed all of the Suzuki blood in bath faith.   The bad faith argument

was based primarily on the theory that the Commonwealth acted unilaterally in deciding to conduct

blood typing and antigen testing, instead of more advanced and available DNA testing, even though

this decision was made at a time when Petitioner's right to counsel had attached under the Sixth

Amendment.   See *Appellant's Initial Brief*, filed by Petitioner in the Pennsylvania Supreme Court

on May 28, 1999 at 62-66.   In making these arguments Petitioner relied on Arizona v. Youngblood,

488 U.S. 51 (1988) –  which holds that the bad faith destruction of potentially exculpatory evidence

can violate due process of law.

29.     The state trial court found that the Commonwealth did not act in bad faith when it

consumed the entire blood sample in testing.   *TCO* 11/12/98 at 14-16.   When the claim was raised

on post-conviction appeal, the Pennsylvania Supreme Court found it waived because it was not

raised on direct appeal.   Abdul-Salaam–II, at 560.[6]

30.     At no time in the state court proceedings, did the Commonwealth ever indicate that

---

[5]Bloser did not testify that he consumed the entire sample recovered from the wheel.  Instead, he testified that he used **all of the blood that was found on the wheel**:

Q:     What does the no result mean for the final two enzymes?
A:     I did not get a result.  There was not enough blood there to do those two [enzymes].
Q:     Not enough blood on the steering wheel?
A:     Yes.

NT 3/14/95, 121.

[6]This Court subsequently found this procedural bar to be inadequate.  See document # 33 at page 21.

9

there was additional blood on the steering wheel, a fact that it either knew or should have known. Moreover, at no point in the state court proceedings, did the Commonwealth provide Mr. Bloser's bench notes showing that the wheel had "lots" of blood.

31.     When this Court permitted Petitioner to inspect a variety of the evidence in this case (document # 33 at page 8-10), his expert discovered the blood which has now been subjected to DNA testing.  The DNA testing shows conclusively, and the Commonwealth does not contend to the contrary, that the blood on the wheel belongs to Scott Anderson and not Petitioner.

**B.      Argument.**

32.     The Commonwealth's actions in this instance violated due process of law. Obviously, when the prosecutor fails to disclose material exculpatory evidence – as with the Clifton material – a due process violation occurs.  Brady v. Maryland, 373 U.S. 83 (1963).  The most common incarnation of this type of due process violation arises when the prosecutor or police fail to provide exculpatory evidence to the defense.  In such cases "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87.

33.     However, another line of Supreme Court cases addresses situations in which the police or prosecutor destroy evidence that may be exculpatory.  Arizona v. Youngblood, 488 U.S. 51 (1988); California v. Trombetta, 467 U.S. 479 (1984); Illinois v. Fisher, 540 U.S. 544, 547 (2004).[7]  In such cases, usually involving physical evidence, the defendant has not yet been able to

_____

[7]In Youngblood, the state failed to preserve semen samples from the body and clothing of a child who had been sexually assaulted. In upholding the conviction of the defendant despite the loss of evidence, the Supreme Court held that "unless a criminal defendant can show bad faith on

determine whether the evidence is exculpatory because it has been destroyed prior to his ability to either examine or test it. In such cases, the Court has held that due process is only violated if the defendant can show that the destruction of the evidence was done in bad faith.

34.     Thus, the difference between a <u>Brady</u> *qua* <u>Brady</u> claim and a <u>Youngblood</u> claim is that in the former, the evidence still exists and its exculpatory value can be presented to the fact finder, whereas in the latter, since the defendant has not had the opportunity to establish the exculpatory value of the destroyed evidence, he can only establish a due process violation if he shows that the evidence was destroyed in bad faith.

35.     The instant claim began as a <u>Youngblood</u> argument that the prosecutor destroyed potential exculpatory evidence during the testing of the blood on the steering wheel. However, with the discovery that the Commonwealth's trial-representation that the blood was destroyed, was false, the inquiry turns from the <u>Youngblood</u> bad-faith inquiry to a <u>Brady</u> question of whether the evidence was suppressed and is material.

36.     There is no question but that the exculpatory blood evidence was not provided to the defense. Bloser testified that he used all of the blood on the wheel in conducting his testing; his bench notes showing that there was, in fact, "lots" of blood, were not provided to the defense; and Respondents failed to disclose the existence of the remaining blood until ordered to do so by this Court and following extended interlocutory appellate proceedings.

--------

the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58. Similarly, in <u>Trombetta</u>, police failed to preserve breath samples in drunken driving cases, preventing defendants from attempting to impeach incriminating Intoxilyzer results. 467 U.S. at 482-483. Again, the Court found no due process violation absent a showing of bad faith or "official animus" related to the destruction of the evidence. In <u>Fisher</u>, the police, acting in good faith and in accordance with police practice, destroyed drugs seized during the defendant's arrest. The Court applied <u>Youngblood</u> and found no due process violation.

**C.     The Court May Rule on this Claim.**

37.     There is no procedural impediment to this Court's ruling on Claim IV.  Even though Dr. Blake's results have not been presented to the state courts for adjudication (except in the *Protective Petition* filed in January, 2007 in order to preserve Petitioner's right to litigate in state court) the exhaustion doctrine does not preclude this Court's review of the Claim.  The habeas corpus exhaustion doctrine, which requires that a habeas petitioner provide the state courts with the first opportunity to rule upon federal constitutional claims, is long-standing, Ex Parte Royal, 117 U.S. 241 (1886), Rose v. Lundy, 455 U.S. 509, 518 (1982) ("The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."),[8] and more recently has been codified (28 U.S.C. § 2254(b)(1)(A) conditions the grant of the writ on the petitioner having "exhausted the remedies available in the court of the State").  However, for two reasons the doctrine does not preclude this Court's review of Claim IV.  First, Petitioner has already presented the underlying claim to the state courts in his first state post-conviction litigation and the exhaustion doctrine does not require a second presentation of the claim, even with the new facts.  This is particularly so because Petitioner has "cause" for not having presented the underlying facts in state court due to the Commonwealth's suppression of the exculpatory blood evidence.  Under such circumstances, the comity-based exhaustion doctrine loses its *raison d'etre*.  Second, even if Petitioner were inclined to present the

---

[8]See also Darr v. Burford, 339 U.S. 200, 204 (1950) ("it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," and therefore, "one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.");

claims to the state courts, there is currently no available state court remedy.  Accordingly, exhaustion is excused.

> ### i. The Exhaustion Doctrine does not Require Petitioner to Afford the State Courts Multiple Opportunities to Review a Claim Particularly When the Prosecution Withheld the Evidence Related to the Claim.

38.    The exhaustion doctrine only requires that a habeas petitioner provide the State "an initial opportunity to pass upon and correct alleged violations of its prisoner's federal rights." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) ("We have not interpreted the exhaustion doctrine to require prisoners to file repetitive petitions" . . . to satisfy exhaustion "state prisoners must give the state courts **one** full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (per curiam ); Picard v. Connor, 404 U.S. 270, 275 (1971) ("It follows... that once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."); Wilwording v. Swenson, 404 U.S. 249, 250 (1971), cf., Story v. Kindt, 26 F.3d 402, 406, n8 (3d Cir. 1994) ("The Commonwealth contends . . .  that Story should have filed another pro se petition in the Court of Common Pleas for Allegheny County.  To the extent that his several previous encounters with appointed counsel and the court proved futile, however, we find Story's failure to pursue a new petition quite understandable.  After all, **it is the legal issues that are to be exhausted, not the petitioner**.") (internal quotation marks and citations omitted).

39.    Because exhaustion is a comity-based doctrine that "serves to minimize friction between our federal and state systems of justice by allowing the state an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." Duckworth, 454 U.S. at 3; Campas

v. Zimmerman, 876 F.2d 318, 323 (3d Cir. 1989), it has no application when a state withholds evidence thereby preventing a petitioner from raising his claim at the appropriate time in state court. Banks v. Dretke, 540 U.S. 668, 690 (2004).  In Banks the Court held that the exhaustion doctrine does not require a habeas petitioner to return to state court when he uncovers exculpatory evidence in federal habeas corpus proceedings that was previously hidden or suppressed by the prosecution, when the underlying claim was raised in state post-conviction proceedings and denied.  This is precisely what has occurred in Mr. Abdul-Salaam's case.

40.     Because Banks controls the exhaustion question here, Petitioner discusses it in some detail.  In Banks, the petitioner presented a claim in his **third** state post-conviction petition alleging that the prosecutor had "knowingly failed to turn over exculpatory evidence involving [a prosecution witness] in violation of Banks's due process rights." Id. at 690.  The claim was presented only upon "information and belief" and was unsupported by any specific proffers or allegations.  Id. at 682. The prosecution responded to the general allegation with a general denial, and the claim was ultimately dismissed as unsupported.  Id. at 683.  Once he was in federal habeas corpus proceedings, the petitioner in Banks was able to flush out the withheld exculpatory evidence that ultimately enabled him to prove a due process violation.  Id. at 684.

41.     As this Court must now do, the Supreme Court was required to address whether the evidence that was not developed in state court was exhausted for purposes of the habeas litigation. Id. at 690.  The Court noted that although Mr. Banks – like Mr. Abdul-Salaam here – presented and thereby exhausted the "legal ground" in his third state post-conviction petition, he – again like Petitioner here – failed to present the evidence in support of the claim in state court.  Id.   Thus, the Supreme Court was required to determine whether Mr. Banks could show "cause and prejudice" for

14

having not presented the factual basis for his claim in state court. The Court held that Mr. Banks established "cause" for not developing the facts in state court. Relying on a similar "cause" analysis conducted in Strickler v. Greene, 527 U.S. 263 (1999) (another Brady case), the Court found that the petitioner in both Banks and Strickler, had established cause for not presenting the evidence to support their claims in state court because 1) the prosecution suppressed the exculpatory evidence; 2) the defense relied upon contrary representations by the prosecutor and 3) the state reiterated the false position in federal habeas proceedings. Banks, 540 U.S. at 692-93.

42.     The same is true in this case, as each of the three elements identified in Banks are present. **1) The Prosecutor Suppressed the Blood Evidence.**   This suppression of the blood evidence began at trial through Bloser's testimony and the Commonwealth's failure to produce Mr. Bloser's bench notes, showing that there was "lots" of blood on the wheel.[9]  Of course, had these notes been disclosed, Bloser could have been questioned about whether there remained additional blood for testing. **2) Petitioner Relied on the Misrepresentations of the Commonwealth.**[10] Petitioner **relied** on the sworn trial testimony of Serologist Bloser that all of the blood from the wheel had been consumed in testing, and thus raised his claim in state post-conviction under Youngblood instead of Brady.     Petitioner continued to **rely** on the Commonwealth

---

[9]They should have been provided before trial, see Pa.R.Crim.P. 573(B)(1)(e) (requiring disclosure of scientific findings), and during trial as a prior statement of a testifying witness.

[10]Petitioner is reticent to use the word "misrepresentation"lest it ratchet-up the level of animus between the parties.  He does not know if the Commonwealth purposefully presented incorrect facts to the various courts at the various stages cited, or unknowingly did so.  And, or course, under Brady and its progeny, the Commonwealth's good or bad faith in this regard is quite irrelevant.  Petitioner, however uses this word in its most literal sense:  the true fact about the remaining blood was not accurately presented by the Commonwealth.  As noted throughout, Respondents either knew that there was more blood, or they should have known.  In either case, the facts presented were not true.

misrepresentations: when he raised the Youngblood claim in state court, the Commonwealth did not respond by indicating that there remained more blood to test.  When the state trial court found that all of the blood was consumed, albeit in good faith, Respondents did not correct this error.  Instead, Respondents silently accepted the Court's finding, which it either knew or should have known was not true.  When Petitioner pursued his Youngblood claim on his state post-conviction appeal, and made the same arguments, the Commonwealth again asserted that the blood was not consumed in bad faith – it never even hinted that more blood remained on the wheel.  See Brief for Appellee (filed by Respondents in Pennsylvania Supreme Court) at pages 52-56.   **3) Respondents' Misrepresentations Continued in this Court.**  When Petitioner raised this Youngblood claim in this Court, Respondents continued to sit on the additional blood evidence and offered the following response:

> The PCRA Court found, there was nothing apparently exculpatory about this sample prior to it being used up during testing.  Donald Bloser testified that the entire sample was used in order to test it. . . This testimony supports the State Court's factual finding in this matter [quoting trial court opinion of November 12, 1998].  These findings require a presumption of correctness and the application of the law are not contrary to clearly established legal principles.
>
> **The defendant baldly asserts that the blood on the steering wheel was not his and that testing would prove it.  In fact, the defendant is so bold to plainly state that is [sic] blood of the co-defendant, Anderson without any evidence.**

Respondent's Answer in Opposition to Habeas Corpus Relief (document # 19) at 43-44 (bold added, underline in original).  In view of this response in this Court, it would truly be  unfair to return this case to the state courts.  The Commonwealth's chastisement of Petitioner for asserting what is now known to be true, while at the same time sitting on the undisclosed evidence and fighting tooth and nail to keep it hidden, is disturbing.

43.    It is apparent that Petitioner has cause for not having developed the factual basis of his <u>Youngblood/Brady</u> claim when this case was in state court.  The trial testimony indicated that there was no remaining blood; the Commonwealth maintained this position up until the point in these proceedings when Petitioner proved this position to be false.  Thus, requiring Petitioner to present the DNA results facts to the state court would turn comity on its head.  Moreover, as the next section shows, such a proceeding would not even be cognizable in state court.

**ii.    There are No Remaining State Remedies.**

44.    The exhaustion doctrine is satisfied if there are no remaining state remedies to exhaust.  Because the Pennsylvania Courts have already reviewed and rejected the legal claim raised herein, there is no available remedy for petitioner in State court and therefore exhaustion is excused.  28 U.S.C. § 2254(b)(1)(B)(I) (exhaustion not required if "there is an absence of available State corrective process"); <u>Duckworth v. Serrano</u>, 454 U.S. 1, 3 (1981) (per curiam) (noting exception to exhaustion requirement "if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief."); <u>Gibson v. Scheidemantel</u>, 805 F.2d 135, 138 (3d Cir.1986) (exhaustion excused "where the petitioner has no opportunity to obtain redress in the state court ... so ... as to render any effort to obtain relief futile.").

45.    To be eligible for relief, a PCRA Petitioner must plead and prove that his claims are neither waived nor previously litigated:

> In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S. § 9543(a)(2).  Further, these issues must be neither previously litigated nor waived. 42 Pa.C.S. § 9543(a)(3).
>
> A claim is previously litigated under the PCRA if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of

17

the issue. 42 Pa.C.S. § 9544(a)(2). . .

> An allegation is waived 'if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding.'

Commonwealth v. Jones, 912 A.2d 268, 276 (Pa. 2006).  The issues and claims set forth herein are

both waived and previously litigated, according to prior rulings of this Court and the Pennsylvania

Supreme Court.

> **a.      The Claim Supported by the Newly Discovered Evidence is "Waived" In Accordance with Pennsylvania Post-Conviction Jurisprudence and Because of the Law of the Case Doctrine.**

46.      In deciding the PCRA appeal (Abdul-Salaam–II), the Pennsylvania Supreme Court

found six of Petitioner's claims – including the Youngblood claim – to have been waived because

they were not raised on direct appeal:

> To be eligible for relief under the PCRA, a petitioner must establish, as a threshold matter, that his allegations have not been waived.   An allegation is deemed waived 'if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review [or] on appeal. . . .' 42 Pa.C.S. § 9544(b). . . Appellant specifically contends that . . . the Commonwealth violated his due process rights by consuming an entire blood sample for testing. . . .   Appellant could have raised each of these claims in his direct appeal to this Court but failed to do so.   Accordingly, these claims are waived and, therefore, beyond the power of this Court to review under the express terms of the PCRA. See 42 Pa.C.S. § 9543(a)(3).

Abdul-Salaam–II , at 560.

47.      Thus, the Pennsylvania Supreme Court held that Petitioner's claim that the blood was

wasted was waived as it was not raised on direct appeal.  The Pennsylvania Supreme Court's waiver

ruling in Abdul-Salaam–II applied equally to record-based as well as extra-record claims.  See

Abdul-Salaam-II, id. (finding extra-record claim that the Commonwealth withheld the Tony Clifton

18

material from Petitioner until post-conviction proceedings was nonetheless waived because it should have been raised on direct appeal).  Thus, to the extent the instant claim relies on extra-record information that could not have been raised on direct appeal, the Pennsylvania Supreme Court's waiver ruling precludes review.

48.     Moreover, the law-of-the-case doctrine would prevent the state trial court or Pennsylvania Supreme Court from revisiting this waiver finding.  See e.g., Pridgen v. Parker Hannifin Corporation, 905 A.2d 422, 433, n13 (Pa. 2006) (law of the case doctrine bars revisiting claim that was decided in a prior appeal).

> **b.  The Claim to Which the Newly Discovered Evidence Relates is "Previously Litigated" and Therefore not Cognizable Under Pennsylvania Post-Conviction Jurisprudence.**

49.     42 Pa. C.S. 9543(a)(3), states, *inter alia*, that to be eligible for PCRA relief a litigant must show "that the allegation of error has not been previously litigated or waived."  42 Pa. C.S. 9544 (a) states, in relevant part, that a PCRA claim is previously litigated if "it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa. § 9544(a)(3); Commonwealth v. Abu-Jamal, 833 A.2d 719 (Pa. 2003).  The claim to which the newly discovered evidence is related is unquestionably "previously litigated" under Pennsylvania law.

50.     In his first PCRA proceedings, Petitioner asserted that the Commonwealth had violated his due process rights in regards to the blood evidence presented at trial.  Petitioner alleged that the Commonwealth had, in bad faith, destroyed exculpatory blood evidence, thereby preventing Petitioner from performing his own DNA testing.  Petitioner further asserted that the Commonwealth misrepresented the truth to the jury when its witness, Detective Bloser, testified that the blood on the

steering wheel matched Petitioner's.

51.     The state trial court reviewed and rejected Petitioner's claims on the merits, holding that the blood evidence had not been consumed in bad faith.  *TCO*, 11/12/98 at 14-16.  On appeal, the Pennsylvania Supreme Court found the <u>Youngblood</u> claim to be waived.

52.     The record thus demonstrates that this claim has been previously litigated, as it has been raised and decided in a collateral proceeding, and relitigation of this claim in the trial court is precluded by the PCRA.  <u>Abu-Jamal</u>, 833 A.2d at 726-7.

**VI.     THE ABOVE-DESCRIBED DUE PROCESS VIOLATIONS ARE MATERIAL TO PETITIONER'S CONVICTION AND WARRANT THE GRANTING OF THE WRIT.**

53.     Petitioner has described that the Commonwealth suppressed two key pieces of evidence and that there are no procedural impediments to the Court granting the Writ. The only issue remaining, is whether the suppression of the exculpatory Clifton and blood evidence is material to Petitioner's conviction.  In assessing materiality, this Court must apply the clear and long-standing standards governing materiality analysis.  These are discussed at length in the *Petition* and will not be repeated here.  <u>See</u> *Petition* at ¶¶ 41-42.

54.     Petitioner has also presented this Court with a lengthy factual argument as to how the Clifton evidence was material.  <u>See</u> *Petition* at pages 27-57, and Petitioner will neither repeat nor summarize that argument here.  Petitioner would only point out that due process requires that a court view the materiality of the suppressed evidence cumulatively – the Court does not review each piece of evidence in isolation.  <u>Kyles v. Whitley</u>, 514 U.S. 419, 421 (1995) ("On habeas review, we follow the established rule that the state's obligation under <u>Brady</u> . . . to disclose evidence favorable to the defense, **turns on the cumulative effect of all such evidence suppressed by the government**");

Rollins v. Horn, 2005 WL 1806504 (E.D.Pa. July 26, 2005) at *45, appeal and cross appeal pending,

Rollins v. Horn, 05-9004 & 06-9005 (3d Cir.) ("in determining whether a prosecutor has violated

Brady by failing to disclose material evidence favorable to the defendant, the court must look to the

cumulative impact of all the evidence withheld, rather than the materiality of any single piece" citing

Kyles).  The Clifton evidence alone was a sufficiently material violation of due process to merit

relief.  When that violation is viewed cumulatively with the false blood evidence presented at trial,

there is not even a remote question but that the materiality standard is met, and due process clause

was violated in Petitioner's trial.

**VII.   CONCLUSION.**

55.    For all of the above reasons, and based upon the entire record of this litigation,

Petitioner requests that the Court grant the Writ as to Claim I and IV and order that he either be

retried within a reasonable time, or released from his incarceration.

Respectfully Submitted,

/s/ Michael Wiseman

_____
Michael Wiseman
David Zuckerman
Elizabeth Larin
Federal Community Defender Office
for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
Counsel for Petitioner,
Seifullah Abdul-Salaam

Dated:  Philadelphia, PA
        April 6, 2007

**Certificate of Service**

I, Michael Wiseman, hereby certify that on this 6th day of April, 2007
I served the foregoing on the following person in the manner indicated:

BY FIRST CLASS MAIL, POSTAGE PREPAID

Jaime M. Keating, Esq.
Chief Deputy District Attorney
Office of the Cumberland
One Court House Square
Carlisle, Pennsylvania  17103

/s/ Michael Wiseman

_____

Michael Wiseman